EDWARDS v. COMMERCIAL UNION ASSUR. CO. et al.  (No. 6322.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 14, 1920.)

1. PARTNERSHIP ⚮69—ON DIVISION OF CROP RAISED BY FIRM, SUBSEQUENT MORTGAGE OF SHARE BY PARTNER TO SECURE INDIVIDUAL DEBT VALID.

Where partners in raising a crop of broom corn, after giving the landlord his share, divided such crop, one of them selling his own share, the other partner, despite a secret agreement that there was a charge on his share in favor of his former partner until certain debts were paid, could mortgage his share of the corn to a bank as security for his personal debt; the crop being no longer partnership property.

2. PARTNERSHIP ⚮183(2)—MORTGAGE OF AND INSURANCE ON INDIVIDUAL PROPERTY OF PARTNER FORMERLY BELONGING TO FIRM BUT SET OFF TO HIM VALID.

Where a crop of broom corn was raised by a partnership, and after the landlord was paid his share the two partners divided the remainder of the crop, each share became the individual property of the partner taking it, and one could mortgage his share as security for a loan, and insure it for the benefit of the mortgagee bank, which could transfer its interest to a third person who paid the partner's debt to it, this despite any secret agreement between the partners that the mortgaging partner's share should be subject to a charge for sums due in favor of the other partner, so that the insurance money on loss was properly payable to the third person who discharged the debt.

Appeal from District Court, Bee County; M. A. Childers, Judge.

Application by Enoch Edwards for writ of garnishment directed to the Commercial Union Assurance Company, as debtor of H. S. Cheney, wherein R. B. Jones and E. B. Hall intervened. From judgment for the intervener Jones, plaintiff or applicant appeals. Affirmed.

H. Snodgrass, of Beeville, for appellant.

Dougherty & Dougherty and H. S. Bonham, all of Beeville, for appellees.

FLY, C. J. Appellant filed an application for a writ of garnishment directed against the Commercial Union Assurance Company, alleging that a suit instituted by him against H. S. Cheney for $1,012.35 was pending in the district court of Bee county, that the debt was just, due, and unpaid, and that Cheney had not property in his possession sufficient to satisfy the debt, and that appellant had reason to believe that the corporation was indebted to Cheney. It was agreed by the parties that the assurance company was indebted to Cheney in the sum of $500, which was paid into the registry of the court. R. B. Jones and E. B. Hall intervened in the suit, claiming the entire $500. The court heard the case and adjudged that Hall recover nothing, that Jones recover $407.72 of the $500, and that the remainder, $92.28, be adjudged to appellant.

There is no statement of facts in the record, and the court adopts the following facts found by the trial judge:

"Enoch Edwards was in partnership with H. S. Cheney in the broom corn business during the broom corn season of 1918.

"Said Edwards furnished money for the employment of labor in addition to Cheney's labor and furnished a portion of the supplies for such laborers for the raising of the broom corn in question and that Cheney had general oversight and management of such laborers and of the work of raising said crop of broom corn. Edwards was to have a one-half interest in said crop, and to be repaid by Cheney one-half of the money he had advanced for raising the crop.

"After the crop of broom corn had been gathered, threshed, and baled, a certain number of bales were turned over to the landlord for rent, and that thereafter Cheney and Edwards divid-

⚮For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ed the remainder of said broom corn, one half thereof being stored in a warehouse near Cheney's residence, and the other half thereof being stored in some other warehouse and turned over to Edwards, who thereafter disposed of it.

"Said Edwards and Cheney at the time of said division of said broom corn had had no final settlement of their partnership affairs, and that moneys that had been advanced by Edwards had not been returned to him by Cheney. And that both recognized that Edwards had an interest in the corn held and stored by Cheney to the extent· of the amount still owing to Edwards by Cheney for advances.

"I further find that after such division and before August 14, 1918, that said Cheney sold to said Edwards a certain quantity of broom corn from the warehouse near Cheney's residence at a fixed price, and that Edwards advanced to Cheney a certain amount of money as a portion of the purchase price of said corn and credited Cheney's account with the remainder of said purchase price; but it was understood that the remainder of the corn was still charged with the balance due Edwards by Cheney.

"On or about the 14th day of August, 1918, H. S. Cheney went to the First National Bank of Beeville and borrowed $200 on his promissory note, due October 14, 1918, and gave a mortgage on said broom corn then stored near his residence in his own name and for his own use and benefit to said bank to secure the payment of said note, and any additional indebtedness to said bank and to be created by him thereafter; that on said date he also took out with the Commercial Union Assurance Company, Limited, of London, England, a fire insurance policy in the sum of $2,000 on said broom corn in his own name and paid the premium out of his own private funds and had a loss payable clause attached to said policy payable to the First National Bank of Beeville, as its interests might appear. On the 27th day of August, 1918, the said ·Cheney went to said bank and borrowed an additional $150 on his own promissory note, due October 14, 1918, for his own use and benefit, the same to be·secured under said mortgage and fire insurance policy. Thereafter, along about the 3d day of September, the said Cheney went to said bank and borrowed $250 additional, and by agreement a $600 note was given to the said bank signed by H. S. Cheney as principal and R. B. Jones as surety, and on said date, the two notes for $200 and $150 respectively, the mortgage securing said notes and the insurance policy payable to the bank as its interests might appear, were transferred by said bank to said R. B. Jones, the said Cheney agreeing to said transfer, to secure Jones against the liability he incurred by signing said $600 note, said note being given by Cheney and Jones for the sole use and benefit of said H. S. Cheney."

Appellant had a judgment against Cheney for $1,000. Other facts necessary to an understanding of assignments of error will be given in connection therewith. There were no objections urged to the facts found by the trial judge.

[1] The first assignment of error is founded upon a statement of facts which is not before this court, and the statement given under it is a quotation from the findings of fact which do not support the assignment. The contention is that Cheney and appellant were partners, and that the broom corn that was insured ,was partnership property as well as the deposited fund, and that Cheney was indebted to appellee as a partner. The court found that the broom corn had been raised, threshed, and baled·; that the landlord had received his part for rent; and that the balance was divided between appellee and Cheney. Appellee disposed of his share, and Cheney insured and stored his part, and it was destroyed by fire. It was found that Cheney owed appellee certain sums, and it was . recognized by both that there was a charge on Cheney's part until his debt was paid. This could not have amounted to more than a verbal lien, because the broom corn was the property of Cheney which had been allotted to him in the division of the crops. Cheney gave a mortgage on the broom corn to secure a debt to the National Bank of Beeville and insured the same for the benefit of the bank, and R. B. Jones signed a note to the bank as surety for Cheney, and the bank transferred the mortgage and insurance policy to Jones to secure him. He paid off the note on which he was surety. It was never paid by Cheney. At the time that the mortgage was given and the policy of insurance secured on the property which had by agreement with appellee been allotted as his part of the broom corn, it was in his exclusive possession, and no one knew of any secret agreement between him and his former partner of· any claim or charge appellee might have against the broom corn. The broom corn given to Cheney in the division of the crop was no longer partnership property, and authorities denying power to a partner to mortgage partnership property to secure the debt of that partner have no pertinency or applicability to the facts of this case. The partnership was to all intents dissolved, and the broom corn allotted to Cheney was his individual property.

[2] Appellant by his action in suing out the writ of garnishment recognized the fact that the insurance money belonged to Cheney, and the whole contest was as to whom the insurance money should be paid. Cheney had insured his interest in the broom corn whatever it may have been, and had transferred that interest to the bank, and the bank had transferred it to R. B. Jones to secure a debt paid off by Jones. There was no insurance for the partnership because there was none, and no secret agreement made with appellee could give him preference over bona fide creditors. It would be inequitable and unjust to permit partners to make a partition of partnership funds, each partner being placed in possession of his portion, and then allow one of them to claim a lien on the property allotted to the other and take precedence over bona fide

creditors who had dealt with him on the faith of the property given to him in the division of the partnership assets. Such is the case presented by the findings of fact of the trial judge. The broom corn belonged to Cheney, and on the faith of it he borrowed money, gave a mortgage on it, and insured it and transferred the insurance to the bank from which he had borrowed the money.

The assignments of error are without merit, and the judgment will be affirmed.